**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 19a0480n.06

No. 18-3317

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Sep 13, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| MAC A. COLEMAN, | ) | |
| | ) | |
| **Petitioner,** | ) | **ON PETITION** FOR REVIEW |
| | ) | OF AN ORDER OF THE |
| | ) | BENEFITS REVIEW BOARD |
| | ) | |
| CHRISTEN COLEMAN TRUCKING; | ) | **OPINION** |
| KENTUCKY EMPLOYERS MUTUAL | ) | |
| INSURANCE; DIRECTOR, OFFICE OF | ) | |
| WORKERS' COMPENSATION PROGRAMS, | ) | |
| U. S. DEPARTMENT OF LABOR, | ) | |
| | ) | |
| **Respondents.** | ) | |

BEFORE: NORRIS, DAUGHTREY, and LARSEN, Circuit Judges.

**ALAN E. NORRIS, Circuit Judge.** Petitioner Mac Arthur Coleman applied for, and received, disability benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901-944 ("the Act"). At this juncture, no one disputes that he suffers from pneumoconiosis. The sole question on appeal concerns the date on which claimant qualified for these benefits. An administrative law judge concluded that his entitlement to benefits began in November 2008; the Benefits Review Board ("the Board") disagreed and determined the date to be August 2012. The Board's decision resulted in a loss to Mr. Coleman of $41,978.10 in benefits. He now seeks review.

We conclude that the ruling of the administrative law judge was legally correct and grant the petition for review.

## I.

Mr. Coleman was born in 1944 and began working as a coal miner in 1964. (ALJ Decision and Order, Nov. 21, 2016). He left the mining industry in 2006. His employer, for the purposes of this black lung claim, was respondent Christen Coleman Trucking; the Director of the Department of Labor's Office of Workers' Compensation Programs ("the Director") is also a respondent, as is Kentucky Employers Mutual Insurance, which insures Coleman Trucking.

Petitioner filed his first application for black lung benefits on January 14, 2008. The district director issued a proposed decision and order on September 30, 2008, denying the claim. In the order, the Director found that Mr. Coleman "was employed as a coal miner in the Nation's coal mines for 23 years." However, the Director went on to conclude that "the evidence does not show that the miner has pneumoconiosis." Claimant did not seek review of the proposed order and it therefore became final after 30 days. 20 C.F.R. § 725.419(d).

Mr. Coleman filed a second claim on August 7, 2012. On April 14, 2016, Administrative Law Judge Alice Craft conducted a hearing during which Mr. Coleman testified at length about the nature of his work history. On November 21, 2016, she issued a decision awarding disability benefits under the Act:

> The Claimant has met his burden to establish that he had more than 15 years of qualifying coal mine employment, and a totally disabling pulmonary or respiratory impairment. The Employer has failed to rebut the presumption that the Claimant is totally disabled due to pneumoconiosis. The Claimant is therefore entitled to benefits under the Act.
>
> . . . .
>
> In the case of a miner who is totally disabled due to pneumoconiosis, benefits commence with the month of onset of total disability due to pneumoconiosis. Medical evidence of total disability does not establish the date of the entitlement; rather, it shows that a claimant became disabled at some earlier date. Where the evidence does not establish the month of onset, benefits begin with

the month that the claim was filed, unless the evidence establishes that the Miner was not totally disabled due to pneumoconiosis at any subsequent time.

The regulation regarding subsequent claims [such as this one] also provides, however, that "[i]n any case in which a subsequent claim is awarded, no benefits may be paid for any period prior to the date upon which the order denying the prior claim became final." I have found that the Claimant is totally disabled based on the results of his pulmonary function testing, which shows obstructive disease, and the medical opinions. I have also concluded that the Claimant's obstructive disease constitutes legal pneumoconiosis based on the operation of the presumption. Review of the testing in his prior claim discloses that all of his pulmonary testing in that claim was qualifying as well, except for the pre-bronchodilator testing on July 29, 2008. . . . I do not credit the opinions of Drs. Broudy and Rosenberg given in the prior claim that the Claimant was not disabled. Their opinions were not consistent with the objective testing available to them. Drs. Forehand and Jarboe agreed that the Claimant was disabled even then. I find that the Claimant has been totally disabled by a pulmonary impairment since at least [February] 2008 when he was first examined by Dr. Forehand in connection with the prior claim. I also conclude that his disability has always been due to legal pneumoconiosis. The District Director issued his proposed decision and order denying the Claimant's prior claim on September 8, 2008. As the Claimant took no further action on that claim, it became final one year later, on September 2009. There is no evidence that he was not disabled at any time thereafter.

I find that Claimant is entitled to benefits commencing in September 2009, the month the denial of his prior claim became final.

(Footnotes and citations omitted.) In short, the date of onset forms the crux of this appeal. Mr. Coleman's total disability due to legal pneumoconiosis is not in dispute.

On January 23, 2017, the administrative law judge granted a motion for reconsideration from the Director, which modified the commencement date for black lung benefits from September 2009 to November 2008. The revised date recognized that the administrative law judge had wrongly determined when the district director's proposed order denying Mr. Coleman's first claim for benefits became final. As cited earlier, the regulations provide that such orders become final after thirty days, not the one year initially applied by the administrative law judge. 20 C.F.R. § 725.419(d).

Respondent Coleman Trucking appealed the administrative law judge's decision to the Board, which held that the administrative law judge erred in is onset-date determination. The Board changed the date when Mr. Coleman's benefits began to August 1, 2012, the date when Mr. Coleman filed his second claim, instead of November 1, 2008, the date when his first claim became final. The Board reasoned as follows:

> The district director determined in the prior claim that claimant had a totally disabling respiratory or pulmonary impairment but did not have pneumoconiosis, and therefore was not totally disabled due to pneumoconiosis. In this claim, however, the administrative law judge reconsidered the medical opinion evidence submitted in the prior claim and determined, contrary to the district director's original finding, that claimant has been totally disabled due to pneumoconiosis since March 2008. That finding was improper. The district director's decision in the prior claim, and its underlying findings, must be given effect as final and correct.

> The administrative law judge cited no other evidence to establish that claimant became totally disabled due to pneumoconiosis at any point between the denial of the prior claim and the filing date of this claim. Nor has claimant pointed to any such evidence. On the other hand, contrary to employer's argument regarding Dr. Forehand's opinion in this claim, a medical opinion diagnosing total disability due to pneumoconiosis does not establish an onset date, but establishes only that claimant became disabled due to pneumoconiosis at some point before the opinion was provided. Because the evidence does not reflect the date upon which claimant became totally disabled due to pneumoconiosis, we modify the administrative law judge's decision to reflect that benefits are payable from August 2012, the month in which claimant filed his subsequent claim.

(Footnotes and citations omitted.) This appeal followed.

## II.

The Act defines pneumoconiosis as "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 30 U.S.C. § 902(b); 20 C.F.R. § 718.201(a).

With respect to the critical question of onset, the regulations provide as follows:

Benefits are payable to a miner who is entitled beginning with the month of onset of total disability due to pneumoconiosis arising out of coal mine employment.

4

Where the evidence does not establish the month of onset, benefits shall be payable to such miner beginning with the month during which the claim was filed.

20 C.F.R. § 725.503(b).

When a miner files a second, or subsequent, claim for benefits more than a year after the final order denying a prior claim, he must show that "one of the applicable conditions of entitlement has changed since the date upon which the order denying the prior claim became final." 20 C.F.R. § 725.309(c) (citation omitted). Furthermore, "[a]ny evidence submitted in connection with any prior claim must be made a part of the record in the subsequent claim, provided that it was not excluded in the adjudication of the prior claim." 20 C.F.R. § 725.309(c)(2). Lastly, "[i]n any case in which a subsequent claim is awarded, no benefits may be paid for any period prior to the date upon which the order denying the prior claim became final." 20 C.F.R. § 725.309(c)(6).

There is one other wrinkle that affects our analysis. As of 2010, the Affordable Care Act, Pub. L. No. 111-48, § 1556(a), revived a former rebuttable presumption: "if a miner was employed for fifteen years or more in one or more underground coal mines, . . . and if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment, then there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis." 30 U.S.C. § 921(c)(4); 20 C.F.R. § 718.305(b)(1)(i) (clarifying that the presumption includes "conditions substantially similar to those in underground mines"). Mr. Coleman's first claim, filed in 2008, did not benefit from this rebuttable presumption. In denying that claim, the district director found that two of the breathing tests submitted by claimant met the regulatory standards required to establish total disability; however, in his view, they did not establish that this disability was "due to pneumoconiosis." However, the presumption applies to the 2012 claim currently on appeal,

5

which the administrative law judge recognized,(observing that "[e]mployer has failed to rebut the presumption that the Miner's disability was due to pneumoconiosis."

The Director readily concedes that the regulations specifically provide for multiple black lung disability claims because pneumoconiosis is a progressive disease that may manifest itself only after the miner has stopped working. 20 C.F.R. § 718.201(c). For that reason, traditional notions of *res judicata* do not apply to these claims. *See Lisa Lee Mines v. Director, OWCP*, 86 F.3d 1358, 1362 (4th Cir. 1996) (en banc) ("[N]othing bars or should bar claimants from filing claims *seriatim*, and the regulations recognize that many will"). That said, a subsequent claim does not provide an opportunity to relitigate an earlier denial of benefits; the miner must show that his condition has changed. 20 C.F.R. § 725.309(c); *Lisa Lee Mines*, 86 F.3d at 1362 ("The duplicate claims regulation, 20 C.F.R. § 725.309(d), does not *bar* new claims, but rather directs that they shall be *denied* based on the earlier denial absent a threshold showing of a material change in conditions."). Relying upon *Lisa Lee Mines*, we have specifically approved this approach to determine whether a claimant has shown enough of a "change" in circumstances to support a subsequent claim:

> [W]e construe the term "change" to mean "disproof of the continuing validity" of the original denial, *Lisa Lee Mines*, 86 F.3d at 1363, rather than the actual difference between the bodies of evidence presented at different times. Under this definition, the ALJ need not compare the old and new evidence to determine a change in condition; rather, he will consider only the new evidence to determine whether the element of entitlement previously found lacking is now present.

*Cumberland River Coal Co. v. Banks*, 690 F.3d 477, 485—86 (6th Cir. 2012) (internal citation omitted).

Turning to the record, the Director states that the only "relevant" evidence is Dr. Forehand's report dated February 18, 2008. While the administrative law judge relied upon a

variety of medical evidence when determining that claimant was disabled, she used the report of Dr. Forehand to set the onset date. The Director stakes out a simple position: since Mr. Coleman's first claim was denied in September 2008, the administrative law judge's reliance upon Dr. Forehand's report dated February 18, 2008, is misplaced because an earlier denial of benefits cannot be undone by a subsequent claim. In order to establish an onset date of disability that predates the filing of a subsequent claim, the onus is on the miner to come forward with evidence of a change in his medical condition since the prior denial of benefits. Because Mr. Coleman does not point to any medical evidence submitted after the denial of his first claim but before the filing of his current claim, the Director contends that the appropriate onset date is when he filed his current claim.

Counsel for petitioner focuses upon the significance of the reenactment of the fifteen-year rebuttable presumption in favor of a finding that a miner's respiratory or pulmonary disease resulted in pneumoconiosis. As already mentioned, the district director who denied Mr. Coleman's first claim concluded as follows: "Although the Pulmonary Function Studies establish the presence of a disease which would be considered to be totally disabling based upon the regulations, that total disability must be DUE TO PNEUMOCONIOSIS." Counsel argues that the 2010 reenactment of the presumption changed that analysis by shifting the burden to the employer to rebut the presumption that coal dust exposure caused pneumoconiosis. Had the presumption been in place in 2008, counsel claims the district director would have been compelled to find pneumoconiosis unless Coleman Trucking came forward with evidence rebutting causation. Notably, the administrative law judge found in 2012 that Coleman Trucking failed to rebut the presumption of causation, and Coleman Trucking does not challenge that finding on appeal.

Seen through the new lens provided by the presumption, the administrative law judge rightly reconsidered the medical evidence submitted with the 2008 claim and determined that, in conjunction with the presumption, an unrebutted finding that pneumoconiosis existed as of the date of Dr. Forehand's report had been established. This approach is completely consonant with the regulations. First, "[a]ny evidence submitted in connection with any prior claim must be made a part of the record in the subsequent claim." 20 C.F.R. § 725.309(c)(2). Second, the administrative law judge did not disturb the district director's decision with her finding. To the contrary, she set the onset date for Mr. Coleman's disability entitlement to begin after the district director's decision became final. 20 C.F.R. § 725.309(c)(6).

Because the Act is a remedial statute, it "has always been interpreted with any ambiguity weighed in favor of miners." *Arch of Kentucky, Inc. v. Director, OWCP*, 556 F.3d 472, 482 (6th Cir. 2009). In this appeal, the parties agree that Mr. Coleman suffers from legal pneumoconiosis and is eligible for total disability benefits. The sole bone of contention is whether he is entitled to approximately four years of additional benefits based upon an earlier onset date.

In our view, the reinstatement of the fifteen-year rebuttable presumption that preceded the filing of Mr. Coleman's second claim supports the decision of the administrative law judge. In the earlier claim, the district director recognized that medical evidence existed that established "the presence of a disease which would be considered to be totally disabling based upon the regulations;" however, he found that Mr. Coleman had not proven that it was "due to pneumoconiosis." Had the presumption been in place, the burden would have shifted to the employer to rebut the presumption that coal dust exposure caused Mr. Coleman's disease. With the benefit of the presumption, the administrative law judge had reason to conclude that the medical evidence submitted during the first claim, coupled with the presumption that coal mining

8

caused Mr. Coleman's health problems, would have resulted in a finding of pneumoconiosis. In that sense, she was not reexamining the evidence as much as reevaluating its legal significance.

**III.**

The petition for review is **granted** and the matter is **remanded** with instructions to reinstate the award of black lung benefits to petitioner beginning on November 1, 2008.